July 5, }
  1901. }

BOSTON & MAINE RAILROAD *v.* MAYOR AND ALDERMEN OF
PORTSMOUTH.

Under chapter 76, Laws 1901, the board of railroad commissioners may
entertain an appeal from an order of city officers locating the tracks of a
street railway whose general route has been established by judicial decree,
whether the order appealed from was made under section 5 or section 6 of
chapter 27, Laws 1895.

A decree by the board of railroad commissioners upon appeal, setting aside
conditions and limitations attached to an order of city officers locating the
tracks of a street railway on the ground that they are not required by pub-
lic interest, is a determination of a question of fact which is not reviewable
by the court.

Such decree is not invalid for want of notice to the municipality if the
mayor and aldermen were duly notified of the petition of appeal and hear-
ing thereon, according to the order of the commissioners ; nor can such offi-
cers raise the further objection that abutting landowners were not made
parties to the proceeding and given notice thereof.

The objections that a petition to the court for the construction of extensions
and additions to a street railway were not authorized by the corporation,
and that an application for the location of tracks was not made by the
directors, cannot first be raised upon an appeal to the railroad commission-
ers from an order of location by the board of mayor and aldermen.

CERTIFIED CASE, from the board of railroad commissioners.
March 15, 1901, the supreme court granted the Boston & Maine
Railroad a franchise or right to construct extensions and additions
to its electric railroad in the city of Portsmouth, upon four routes
which were duly set forth and described. March 28, the railroad
petitioned the mayor and aldermen of the city of Portsmouth for a
location of the proposed tracks, poles, and other structures on said
routes, which locations were voted by the board of mayor and
aldermen May 20, 1901, upon certain conditions, among which
were the following :

1. That all of the extensions and additions authorized be com-
pleted on or before December 1, 1901.

2. That the work of construction be commenced at a point on
Market street and prosecuted through Pleasant and Marcy streets
to Newcastle avenue, first ; and then through South street to
Lafayette road, then from the end of Frenchman's lane to the
Plains, then over the Plains through Middle road to South road,
then through South road to Lafayette road ; and that all except
that upon the Plains route, so called, be completed before July 15,
1901.

3.   That if all such extensions are not completed before December 1, 1901, the parts then laid shall be taken up and removed by the city of Portsmouth at the expense of the Boston & Maine Railroad.

Being aggrieved by these orders and conditions, the railroad filed a petition of appeal to the board of railroad commissioners, specifically setting forth the orders and conditions imposed as above as the ground of appeal, and prayed that the same might be set aside.   An order for a hearing on the petition was thereupon made, and an order of notice was issued and served, as ordered, upon the mayor and aldermen of Portsmouth.  ˙At the appointed time a hearing was had in the presence of representatives of both parties ; and the board set aside the above orders and conditions of the mayor and aldermen, and affirmed the locations and orders in other respects.   Counsel for the board of mayor and aldermen requested that a statement of its legal positions be certified to the supreme court, in substance as follows :

That the board of railroad commissioners has no jurisdiction ; that said board can make no decree until the city of Portsmouth and all abutters have notice and are made parties ; that the fact that pole locations are wrong affords no ground for appeal; that if any of these locations are not asked for in good faith and intended to be built upon, the appeal must be dismissed; that the appeal should be dismissed because the directors of the railroad did not petition for the locations, and because the railroad did not authorize the original application to the court.

*Page & Bartlett* and *John S. H. Frink*, for the plaintiffs.

*S. Peter Emery* and *Samuel W. Emery*, for the defendants.

WALKER, J.   Whatever power the board of railroad commissioners had to entertain the appeal from the orders of the board of mayor and aldermen locating the tracks of the proposed railway is conferred by legislative enactment.   Before 1901, the railroad commissioners were not authorized to review, modify, or set aside the action of the local board in regard to the location of the tracks of street railways.   The legislature had not only not provided in terms for the revision of the orders of the board of mayor and aldermen, but by the act of 1895 had enacted that such boards should "have exclusive and final jurisdiction to locate the tracks, side tracks, turnouts, and poles of said street railway."   Laws 1895, *c.* 27, *s.* 6.   In section 5 the following language occurs : "All parts of street railways occupying any portion of a public highway or street shall be located thereon by the mayor and alder-

men of cities or selectmen of towns in which said portions of highways or streets may be. The board of mayor and aldermen of a city or the selectmen of a town, after the determination, as herein provided, that the public good requires the building of the proposed railway on the proposed route, upon petition of the directors of such railway corporation for a location of its tracks on or over any public highway upon the line of said route, shall give notice by publication to all parties interested of the time and place at which they will consider such petition for location in the public highways of said town or city; and after a public hearing of all persons interested they may make an order granting the same, or any portion thereof, under such restrictions and upon such conditions as they may deem the interests of the public require; and the location thus granted shall be deemed to be the true location of the tracks of the railway." While both of these sections purport to grant authority to the local board to determine the location of the tracks of street railways, it is apparent that section 6 did not authorize the doing of anything essentially different from what was authorized by section 5. In both, power was plainly granted to locate the tracks of street railways. But it was not intended by section 5 to grant a power the exercise of which might or might not be final, and to confer in section 6 upon the same tribunal "exclusive and final jurisdiction" to do the same thing. An option was not given the selectmen to proceed under one section or the other, dependent upon their desire as to the conclusiveness of their action. The ordinary consistency of legislation precludes such a construction and is evidence that the legislature did not intend such a result.

The general purpose of the legislation embodied in these two sections is not obscure. It was to make the selectmen of towns and the boards of mayor and aldermen in cities final tribunals to determine the location of the tracks of proposed street railways, whose general routes had been granted by judicial decrees, and to prescribe such reasonable rules and regulations as to the construction and operation of the railways, as the local needs and convenience in the use of the highways might require. The purpose was to prevent prolonged litigation and unnecessary delays. Whether in the case of unreasonable, absurd, or captious conditions and limitations imposed by the local board, upon the laying out of railway tracks under these statutory provisions alone, the aggrieved party might not in some form of proceeding obtain relief, it is unnecessary to inquire. It is sufficient for the present decision, that sections 5 and 6 must be read together, and that when they are so considered the legislative purpose is as plain as it would have been if section 6 had been omitted and the substance of it had been embodied in section 5 as a qualification of the power there granted.

The jurisdiction of the board of railroad commissioners, as an appellate tribunal, depends entirely upon "An act in amendment of section 6, chapter 27, of the Laws of 1895, relating to street railways," approved March 20, 1901. Laws 1901, *c.* 76. Said section 6 is amended by section 1 of the new act so that the portion of it quoted above now reads as follows: "The board of mayor and aldermen of cities and selectmen of towns shall within their respective cities and towns have jurisdiction to locate the tracks, side tracks, turnouts, and poles of said street railway." The policy of making the orders of the local board final was, therefore, reversed by the last legislature; and an appeal was provided for in section 2 of the new act, which is as follows: "Any party aggrieved by any location or order of the board of mayor and aldermen or selectmen may appeal to the board of railroad commissioners within fifteen days after said hearing, or the issuing of said order, and shall be entitled to a speedy hearing upon his said appeal upon such notice to said board of mayor and aldermen or selectmen, and other parties interested, as said commissioners may order. The decree of the railroad commissioners affirming or setting aside such location or order shall be final upon all questions of fact. At the request of any party to the proceeding, any question of law involved in the determination of such appeal shall be certified to the law term of the supreme court for decision."

The right to appeal to the commissioners is thus given to "any party aggrieved by any location or order" of the local board. From the language used it would not seem to be material whether the location or order appealed from was made under section 5 of the act of 1895, or under section 6 of that act as amended by the act of 1901, for two reasons: (1) because the language is broad enough to refer to both sections, and (2) because if it is, as a matter of verbal construction, made to apply to section 6 alone, the logical and necessary legal effect of it must be to afford an appeal from any location or order made under section 5. In other words, there is no substantial difference in the power conferred in these two sections,— and especially is this so since the amendment of section 6 as above indicated,— and it would be absurd to suppose that the legislature intended to give an appeal from a location made by selectmen under section 6, and to deny an appeal from the same location made by the same tribunal under section 5. There is little, if any, evidence that the legislature had such a purpose.

The legislature has, however, furnished direct evidence that the appeal provided for applies to proceedings under section 5 as well as under section 6. Section 2 of the new act provides for an appeal "within fifteen days after said hearing." But nothing is said

in section 6 about a "hearing." Section 5 provided for notice and a hearing, and it is apparent that reference was made directly to the latter section, and that the language of section 2 of the new act was intended to apply to both of the sections of the original act, as it would have applied if the entire language of both of those sections had been included in a single section, called section 6.

Nor does the title of the new act, which purports to be "in amendment of section 6, chapter 27, of the Laws of 1895," furnish evidence that the act was not intended to have other and additional effect. While it did amend section 6, it also gave an additional remedy by appeal to "any party aggrieved by any location or order of the board of mayor and aldermen or selectmen" in reference to the laying out of tracks of street railways. *Piscataqua Bridge* v. *Bridge*, 7 N. H. 35, 57. To adopt the construction suggested would be to effectually defeat the general purpose of the legislature and practically to deny an appeal to the commissioners from a location ordered by a local board. It would, in effect, be a finding that the legislature of 1901 did not intend to establish an additional practicable remedy by appeal in such cases.

As the commissioners had jurisdiction, their decree setting aside the conditions and limitations attached to the order of the board of mayor and aldermen locating the tracks is "final upon all questions of fact" (Laws 1901, *supra*, s. 2), one of which was whether "the interests of the public" (Laws 1895, *c.* 27, *s.* 5) require such conditions and limitations. If they were not calculated to promote and protect the interests of the public, but were imposed for some ulterior and captious purpose, the order of the commissioners setting them aside was fully authorized, and the rightfulness of their finding cannot be reviewed here.

It is claimed that the decree or order of the commissioners is unauthorized on account of some defect in the notice, or for want of notice, to the city of Portsmouth and to the abutters, and because they are necessary parties to this proceeding. The second section of the act of 1901 provides for "a speedy hearing upon said appeal upon such notice to said board of mayor and aldermen or selectmen, and other parties interested, as said commissioners may order." It appears that notice was issued and served upon the mayor and aldermen, who officially represent the city of Portsmouth, and that they are parties to this proceeding. Nothing but the most technical reason could be assigned in support of this objection. Its want of any substantial merit is apparent. Nor can the defendants raise the further objection that other interested parties were not notified. *State* v. *Richmond*, 26 N. H. 232, 244, 245; *Peirce* v. *Portsmouth*, 58 N. H. 311; *State* v. *Moore*, 69 N. H. 102, 120, 121.

If it was legally competent for the commissioners to pass upon the question of the good faith of the railroad in its petition to the board of mayor and aldermen, a point which is not decided, it was a question that could not be determined adversely to the plaintiff without evidence tending to prove bad faith. There is no presumption that parties appear in judicial proceedings in bad faith. As we understand the certified case, this question was answered by the commissioners in favor of the plaintiff.

The objections that the application for the locations was not authorized by the directors of the railroad, and that the original petition to the court was unauthorized, cannot be raised for the first time at this stage of the proceedings. The board of mayor and aldermen, having entertained the plaintiff's petition and located the routes prayed for, cannot now object that there was no party plaintiff before it. The board has waived any right it may have had to take that position.

As the certified case presents no errors of law, the orders of the commissioners are valid and binding.

*Case discharged.*

All concurred.